And our last case for argument is Federal Trade Commission v. Trudeau. Mr. Getty. May it please the court, Patrick Deedy on behalf of the objectors appellants. This I describe as a footnote in what I think is a long saga before this court, Mr. Trudeau. But the narrow issue presented on our appeal is whether the two law firms involved. Counsel, before we discuss what you think the narrow issue is, we need to figure out whether we have a jurisdiction. You say that there is jurisdiction under the collateral order doctrine, and I'm not sure what this order is collateral to. Well, Judge, at the time, we didn't think it was a final order with respect to trade. Yes, well, I certainly understand that, because if I'm understanding what's going on correctly, the receiver collected something like $8 million, and this order approves the distribution of about $4 million. That's correct. I could understand a collateral order argument if so much was being distributed that your client would have no chance of recovering from what was left. But there will be $4 million left, which is way over the amount of your client's claims. So we still have a receivership estate with a lot of assets in it and a lot of claims against those assets that need to be wrapped up. Well, I would respectfully disagree with you, Judge. I don't think that is the record. If you read the motion filed by the receiver, it's to turn over the remainder of the receivership estate, which was at that time $4 million. There had been an interim transfer of, I believe, the $4 million that you were speaking of. So at the time of this particular notice to all of the creditors that was sent out in connection with this motion, it was anticipated that based on this order, the remainder of all the assets, to the extent there were no other claims recognized by the court or some other ruling made by the court with respect to some objection, that all of those proceeds would be turned over to the FTC, which was about to begin the process of attempting to remediate the injuries that occurred with respect to it. Yeah. Well, we may need to recalibrate. It would help at least me. It might help my colleagues to have the parties file something supplemental explaining what is left in the fund, whether there are remaining disputes to the assets in the fund, whether this is, despite the caption on it, effectively the terminal order the district court is ever going to enter. Well, and just so the record is clear, I thought we laid out, and I think the counsel for the court, what they described as ministerial acts that occurred after the date of October 7th, when Judge Gettleman entered his order with respect to ruling on the objections. There were a number of objections that were filed, including those by Mr. Trudeau with respect to his alternative issues. Look, look, I hope you've got my question. I understand, Judge. I'd be happy to file. But the question is whether this really is ending this receivership or whether there are a bunch more assets and there's still a fight. One reason why I'm asking this question is not only the language of the statute, but also the Supreme Court's holding last term in Bullard against Blue Hills Bank. This receivership is effectively a bankruptcy proceeding by another name. And Bullard holds that in a bankruptcy proceeding, there is no appeal until all the claims to the estate assets have been wrapped up. You can't piecemeal it. So if this were a bankruptcy proceeding, it looks like Bullard would block an appeal if, as I suspect, there's another $4 million to parcel out. But if it turns out there isn't another $4 million to parcel out, then under the Bullard approach, one could appeal now. We really need to know which is which. Fine, Judge. We'll be happy to clarify the record, and I'll discuss that with counsel of the FTC, and we'll file a joint motion or a joint filing with the court with respect to that issue. I would respectfully say that I don't think there's any more assets in the estate based on subsequent rulings. Then it would be final, and we're done. Okay. Let me talk then about what we believe is a narrow issue here. It was the issues that were presented here with respect to the objections that were made at the time to the case, was that these two law firms were essentially seeking to recover reasonable fees and expenses with respect to a document production that was made prior to the time that the court heard the FTC's motion to find Mr. Trudeau in contempt. And that the law firms initially sought recoupment from the trustee after the case was resolved, and they were able to do that because at that point in time, pursuant to the receivership order, the receiver was unable to pay any of the pre-receivership claims, which included a significant amount of the legal fees and costs that had been incurred by both of these firms with respect to that underlying document production. What do we know about the source of the funds in these accounts? If these were funds that were the proceeds of fraud, why don't the victims of the fraud have an unambiguously superior right to those funds? I don't dispute that they have a right, Judge. The question that we had, we believed at the time that the objections were filed, is that because the court on other occasions had allowed for certain of the pre-receivership assets to be paid out of the receivership estate, that we believed that based on what the law firms had done in connection with this case, we provided some benefit to both the FTC and the receivership court with respect to the location of these various assets. The documents that were produced were all emails and other electronic documents primarily that were used initially to find Mr. Trudeau in contempt and to order the receivership to be put into effect, and then subsequently it's re-indicated in our motion after receivership was entered. I can understand the argument that perhaps the receiver is being penny-wise and pound-foolish, that without a willingness to pay for law firms under these circumstances, the receiver would have collected less. But what we have here is a review of the district court's decision, and if the district court says, as between the thief and the victim, the victim always wins and the thief can't hire lawyers to help divert the victim's money, well, that's not a difficult proposition. We understand that, Judge. Our basis for this appeal, we think that the court should look at is, if that's all that Judge Gutteman had said and he had reached that decision absent what we believe were the factual errors in his ruling, then perhaps we would be arguing something else. But what's clear from the record is that he made, we believe, four separate factual errors with respect to the law firms who were seeking to obtain some relief with respect to this issue, including whether or not they had standing. He said he didn't believe they had standing. He thought incorrectly, I believe, that the law firms were seeking to be repaid for the legal efforts that were made initially in the document production to seek to limit or otherwise restrict some of the broad requests made by the FTC. And he also suggested that perhaps, or he thought that the Rule 45 requests that had been made contemporaneous with the document requests and the motions to compel were never made. And in fact, all those things actually occurred. And he based, I believe, at least some of his decision with respect to that issue or whether or not these particular objectors should receive any type of compensation based on the fact that he really didn't see that law firms had sufficiently laid out a claim. And he suggested somehow, even though the order does not permit it, they should have raised this claim sooner in the course of the two years that the receivership had been going on since the imposition back in July of 2013. And it's for that reason, we believe, that when you look at all these factors, that although it is a difficult standard to establish that in this particular case, we believe that Judge Gettleman abused his discretion in considering these objections and are asking for this court to remand the matter for further proceedings. I'll reserve the remainder of my argument for rebuttal. Thank you. Okay. Thank you, Mr. Getty. Mr. Bergman? Good morning. May it please the Court, my name is Michael Bergman. I represent the Appalachian Federal Trade Commission in this matter. The district court acted well within its broad discretion when it gave payment priority to compensate the fraud of consumers who were going to recoup only a small portion of their losses. As Judge just mentioned with regard to the tainted funds here, the paramount interest, what the district court focused on, he gave three reasons why to refuse the objections raised by the law firms. I'll outline them and then go back and explain each one if you're interested. The first one is a paramount interest in redress to the consumers taking priority over the fees to the law firms. And this is particularly true, as was just discussed, where consumers were not getting reimbursed anywhere near the amount that they should be. In fact, there was a $37.6 million judgment and the receiver had only found $8 million. So every penny taken to pay the lawyer's fees would be taken away from consumers who were already only getting a quarter of the amount that they deserved. That was one of the key points that Judge Gettleman made with regard to overruling the objections. Secondly, the court found properly that Website Solutions was controlled by Kevin Trudeau. So in effect, it would be like paying Kevin Trudeau's legal fees and the law firms could pursue the fees from Trudeau directly. In fact, the receiver has found that there was $30 million. Well, but what will be wrong with paying Kevin Trudeau's legal fees? The Supreme Court had a very long opinion last year in Luis against the United States on the question when legal fees can be paid from a pot of money generated by a district court. There isn't very broad discretion. That's the holding of Luis. The holding of which go back to the victims free of any claims by lawyers and substitute assets, assets that the criminal may have, say, purchased with the proceeds of the crime. And for substitute assets, the court said, lawyers get to be paid first. A claim of very broad discretion for district judges to do what they want was expressly rejected by the justices. They reversed an order that barred payment to lawyers. In this case, it would fall within the first category, Your Honor. I mean, clearly the funds here would have been... I would be more comfortable if the district court had made such a finding. But what the district court said, in fact, is I've got very broad discretion to appoint this money where I think it's equitable. And Luis expressly disapproved that approach. I think that the district court, even if the district court did not expressly address Luis' standard, that it still is consistent with that in the sense that these funds are, in fact, tainted. He made the finding here, one of his purposes, and this is the second reason I just gave, was that, in fact, these were Kevin Trudeau's, these are assets from Kevin Trudeau, and these funds came from his various schemes and, therefore, were, in fact, tainted funds. So these would not be substituted funds. These would be tainted funds from Kevin Trudeau's illegal activities. So even given the perhaps more circumscribed level of review from the Luis case, the district court's ruling here should be affirmed. The third reason given by the district court here had to do with the fact that, in the main, that the firm's actions did not truly benefit the receivership, but, in fact, delayed or impeded the receivership, and that, on balance, it hindered the FTC's investigation much more than it helped. Going back to the first point, and again, I think this is all consistent with Luis, and if necessary, Your Honor, we can file a supplemental brief with respect to how this decision is consistent with Luis' standards. Yes. If you're going to talk about Luis, you need to understand that Luis is talking about two strands of law. One is the Sixth Amendment, a strand that's applicable only in the criminal case, and the other is the common law treatment of these kinds of apportionment between victims and lawyers. The part of Luis that you need to pay attention to is what it I'm happy to do that, and, again, our position would be, and we can put that in the supplemental briefing, is that it is consistent with those common law rules, and, again, with respect to that these funds were, in fact, that, you know, were the result of tainted funds from Kevin Trudeau's activities, and, again, consumers receiving only a very small portion of what they ultimately deserved, as we state in the court decisions, which I don't believe would be necessarily inconsistent with Luis, but, again, we can address this. These will be on brief pages 20 to 21, as a matter of the court's equity. Courts have routinely declined to pay lawyers' fees from frozen or receivership funds, which will lessen the amount that goes to defrauded consumers, particularly where the amounts that are going to those injured consumers are less than what they deserve. And this is particularly true, a number of those cases dealt with sort of preliminary relief situations, TROs or PIs. In this case, the amount of the large shortfall given to consumers was known and certain, and as the Ninth Circuit had mentioned in the Nobles-Meadows case, that was reason enough, the fact that the large shortfall going to consumer victims was reason enough to deny monies going to attorneys. And so, therefore, as an equitable matter, the need to maximize consumer redress here justified the denial of the attorneys' fees, which I would take the position is, in fact, consistent with Luis' standard of the common law analysis that you refer to, but we can certainly submit a supplemental briefing on that point. Again, the second point being that the website solution was controlled by Kevin Trudeau, so in effect would be like paying the legal fees, and the third point being that the district court clearly, one of the spaces was the fact that the law firms did not really benefit the receivership, but they later impeded the receivership. The original website solutions subpoena was issued in the end of December. The law firms entered their appearance, ended up filing a motion, opposing a motion to compel it in the end of December. They were ultimately ordered to produce it by the beginning of March. The production to the FTC wasn't until May. As a matter of fact, they didn't, Website Solutions didn't finish their subpoena in March 2013, which was after Kevin Trudeau's 30B6 deposition, after the deposition of Mark Lane. So in fact, this didn't, in fact, benefit the FTC. Again, any kind of production by the law firms were a benefit to their own clients who were legally obligated to comply with their subpoena So for all these bases, and again, I believe that it would be consistent with Louise, but we will address that point. It was within the court's discretion to deny the submission for attorney's fees by the lawyers. We also, as we stated in our brief, the law firms did not have any right under Federal Rule 45 either. And with this in a supplemental briefing, our positions, you can tell from our briefs, are that the October 7th ruling was in fact a final decision under Section 1291. It was a final post-judgment ruling. It effectively ended the, for two bases. One was it ended the collection proceedings by the receiver, and it also acted essentially as a final post-judgment ruling, even if there were some post-rulings or ministerial filings that were done. It's our position that it's not collateral. It's not under the collateral order doctrine. It's not under 1292. It's a final ruling under 1291 for the reasons that we gave in our brief. By the way, if the parties are going to address this, in addition to telling us exactly what, if anything, is left to decide in the district court, you might take a little look at 28 U.S.C. 1292A2, which provides for interlocutory appeal of some orders in receivership cases. I believe that we will address that. I don't think 1292A2 applies here. Yeah, well, it may not. But we will. That's something that we had looked at. Again, our position was that this was a final decision. The October 7th decision was a final decision by the district court under 1291. If the court has no other questions. Okay, thank you, Mr. Berkman. Mr. Getty, do you have anything further? Thank you. With respect to the issues raised on the Ruiz, we would submit and we would file something supplemental with respect to the proceeds of the $8 million, which were all taken from these Trudeau-related entities, which we indicate in our brief are all entities that were created after the contempt citation was, or, the order was entered back in, I believe, 2009. Website Solutions, in particular, was not in existence prior to that date and, in fact, had, the course of the receiver had collected proceeds that they were able to locate primarily from. Well, as you'll discover when you go and look at the Ruiz, the Supreme Court cares about whether the assets are traceable to the crime or whether they are substitutes for assets traceable to the crime. And the district court obviously did not make any findings about which these assets were. I understand that, Judge. We can go back and look at, he dealt with, I believe most of it was the income that was generated and the proceeds that were generated that wound up in the receivership were primarily from the business activities that occurred in these entities after the date of the contempt citation. And I guess with respect to the other issue that counsel raises, that there was no benefit, we would respectfully disagree, and we indicate it in our briefs, that March 4th was the day that Website Solutions was ordered to produce. Mr. Sand, who I represented in the case, and Hogan Marin represented individually, he was subpoenaed finally correctly in April. And in 30 days, we produced, we believe, in early May, most of the documents that were needed. I think the date that counsel is referring to is when the attorney-client privilege log was finally produced to the parties in the case. But with respect to all of these, with respect to the documents that were produced, we believe they did benefit because they were all marked as exhibits and used in the contempt citation or contempt hearings with respect to Mr. Dureau. There were emails between him and my client. There were emails with the various attorneys involved that demonstrated his efforts to essentially avoid the consequences of the contempt order. So we believe, for those reasons, we would disagree with the court's finding with respect to no benefit. But we think the other grounds and the other errors that the court made are sufficient to warrant remand for further proceedings, either before Judge Gettemann or some other judge. There's no further questions. Okay. Thank you, Mr. Denny. Thank you. Mr. Berkman.